```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

KAREN GILL, *et al.*,              *

    Plaintiffs,                *

vs.                                *       CASE NO. 4:12-CV-77 (CDL)

KEVIN HARTSHORN, *et al.*,         *

    Defendants.                *

O R D E R

This action involves approximately 300 real estate holding trusts whose beneficiary is the Gill Family Cornerstone Trust. Defendants Kevin Hartshorn, Daniel Van Gasken, Eastern Property Development, LLC, and South East Enterprise Group, LLC (collectively, "Hartshorn Defendants") seek a declaration that Defendant Loren Gill and Intervenor Plaintiff Wallace Whitten ("Whitten") are not trustees of the real estate holding trusts. Presently pending before the Court is the Hartshorn Defendants' Motion for Summary Judgment (ECF No. 60), which Plaintiffs Karen Gill and Lauren Gill do not oppose. For the reasons set forth below, the motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## DISCUSSION

The key question for purposes of the pending summary judgment motion is whether there is any evidence to create a genuine fact dispute that Loren Gill and Whitten are current trustees of the real estate holding trusts. As discussed in more detail below, the evidence viewed in the light most favorable to Loren Gill and Whitten reveals that they are not.

The Gill Family Cornerstone Trust ("Cornerstone Trust") is an irrevocable trust settled by John A. Gill, Jr. on June 18, 1999. *See generally* Hartshorn Defs.' Mot. for Summ. J. Ex. A, Gill Family Cornerstone Trust, ECF No. 60-3 ("Cornerstone Trust"). The Cornerstone Trust named Kevin Hartshorn ("Hartshorn") as trustee. *Id.* at 3.[1]

---

[1] The Cornerstone Trust does not contain page numbers. For the sake of simplicity, the Court refers to the page number of the electronic version attached to the Hartshorn Defendants' summary judgment motion, ECF No. 60-3.

It is undisputed that John Gill executed a number of separate trust declarations under which he conveyed certain property to various holding trusts, including a number of real estate holding trusts. It is also undisputed that all of the real estate holding trusts had the same beneficiary: the Cornerstone Trust. Finally, it is undisputed that, except for a description of the property held by the real estate holding trusts, the real estate holding trusts all contain substantially similar wording.

## I. The Trust Documents

Each real estate holding trust names three initial trustees. *See, e.g.,* Hartshorn Defs.' Mot. for Summ. J. Ex. C, 202 Oakridge Commercial Real Estate Holding Trust at 3 ("202 Oakridge Trust"), ECF No. 60-6.[2] It is undisputed that the initial trustees of all of the real estate holding trusts were Daniel Van Gasken, Wallace Whitten, and Robert Hurst. *Id.* Each real estate holding trust refers to a "trust protector," who has the power to terminate trustees and to appoint successor trustees. *Id.* ¶ 10 ("If the Trustees appointed initially herein are unable or unwilling to serve as Trustee, a substitute or successor Trustee needs be appointed for him or her, choosing first from the below individuals, and the remaining Trustees, by

---

[2] The 202 Oakridge Trust does not contain page numbers. For the sake of simplicity, the Court refers to the page number of the electronic version attached to the Hartshorn Defendants' summary judgment motion, ECF No. 60-6.

3

unanimous vote, after approval from the Trust Protector, may elect a Trustee approved of by said Trust Protector."); *id.* ¶ 18 ("The Trustees will serve for a term of two years, and which term will automatically renew unless terminated by the Trust Protector.")

Each real estate holding trust has a provision that incorporates by reference any provision of the Cornerstone Trust that is missing from the real estate holding trusts but is necessary for the administration of the real estate holding trust. *Id.* ¶ 20. The real estate holding trusts do not define the term "trust protector." The Cornerstone Trust, however, does provide for a trust protector. *See* Cornerstone Trust ¶ 15.1. Based on the Cornerstone Trust, the trust protector has the power to remove trustees and to approve successor trustees. *Id.* ¶ 15.1a. The Cornerstone Trust states that a trust protector "may be replaced by a unanimous vote of then-subsisting Trustees at the recommendation of the General manager of the contracted managerial organization, at any time." *Id.* ¶ 15.2a. In addition, the Cornerstone Trust provides: "Should the Trust organization, at any time, find itself without the services of a competent Trust Protector, then it will be contingent upon the Executive Trustee to assume the powers and responsibilities of Protector until such a time as an acceptable replacement is identified and installed by the Board of

4

Trustees." *Id.* ¶ 15.2b. The Cornerstone trust further states that if the trust protector is terminated, then the investment consulting trustee ("ICT") "will be the normal Trustee's first alternative to fill the vacated Protector's position as approved by the Trustees. In which case, the ICT will then fill both positions until a suitable replacement is established for one or the other of those positions, by the Executive Trustee." *Id.* ¶ 17.a3. If the investment consulting trustee and the trust protector are the same individual or entity and if the individual or entity vacates the positions, then "the Trustees are therefore empowered to recruit and install (an) appropriate successor(s) by a unanimous vote of the then subsisting Trustees." *Id.* ¶ 17.a4. Under these circumstances, "the Trustees will look to the manager(s) of their contracted managerial organization to fill the vacated ICT and/or Trust Protector's position(s)." *Id.* ¶ 17.a4)1. Though the Cornerstone Trust does not define the term "executive trustee," the signature page indicates that Hartshorn was the original executive trustee. *Id.* at 22.

## II. The Trust Protector

The following facts regarding the chronology of trust protector are undisputed. The Cornerstone Trust named Kerry R. Smith as trust protector. Kerry Smith resigned as trust protector of the Cornerstone Trust in late 2003 or early 2004,

5

and Jay Nicol was appointed as his replacement. Jay Nicol resigned as trust protector in February 2011.

The Hartshorn Defendants assert that, pursuant to ¶ 15.2b of the Cornerstone Trust, Hartshorn assumed the powers of trust protector of the Cornerstone Trust and the real estate holding trusts when Nicol resigned. Van Gasken Dep. 268:23-269:5, ECF No. 66; *accord* Cornerstone Trust ¶ 15.2b ("Should the Trust organization, at any time, find itself without the services of a competent Trust Protector, then it will be contingent upon the Executive Trustee to assume the powers and responsibilities of Protector until such a time as an acceptable replacement is identified and installed by the Board of Trustees.").

Loren Gill and Whitten contend, however, that Loren Gill became trust protector of the Cornerstone Trust after Nicol resigned. In support of this contention, Loren Gill and Whitten point to the declarations of Loren Gill and Steve Thomas ("Thomas"), who have differing accounts of the trust protector story. According to Thomas, Loren Gill was appointed trust protector because, under ¶ 17.a3 of the Cornerstone Trust, the "next choice" after Nicol resigned as trust protector "would be" the investment consulting trustee, Raymond Thorn. Thomas Decl. ¶ 9, ECF No. 83-3. Thorn, however, resigned from his position as investment consulting trustee in early February 2011. *Id.* Therefore, according to Thomas, because the Cornerstone Trust

was without both a trust protector and an investment consulting trustee, the "contracted managerial organization"—which was managed by Loren Gill—was "empowered to fill the vacated" trust protector position under ¶ 17.a4 of the Cornerstone Trust. *Id.* ¶ 10. Thomas asserts that the "contracted managerial organization" appointed Loren Gill as trust protector. *Id.* ¶ 11.

There is, however, no evidence that the "contracted managerial organization" actually had any power to take such an action under the clear terms of the Cornerstone Trust. Significantly, Thomas misquotes ¶ 17.a4, which states that "the *Trustees*"—and not the contracted managerial organization—are "empowered to recruit and install (an) appropriate successor(s) by a unanimous vote of the then subsisting Trustees." Cornerstone Trust ¶ 17.a4. Though the Cornerstone Trust states that the trustees "will look to the manager(s) of their contracted managerial organization to fill" the trust protector position, *id.* ¶ 17.a4)1, there is nothing in the Cornerstone Trust document that takes the power of appointing a trust protector away from the trustees. And, there is simply no evidence that the trustees of the Cornerstone Trust, which undisputedly included Hartshorn, actually approved Loren Gill as trust protector. Accordingly, Steve Thomas's declaration does not establish that Loren Gill was appointed trust protector.

7

Likewise, Loren Gill's own declaration does not establish that Loren Gill was appointed trust protector. According to Loren Gill, John Gill retained the power to appoint and terminate trust protectors. Loren Gill Decl. ¶ 8, ECF 83-2. After John Gill became a fugitive, his wife Barbara Gill signed a document purporting to appoint Loren Gill as trust protector pursuant to a power of attorney signed in her favor by John Gill. *Id.* ¶ 10. Loren Gill did not, however, point to any provision of the "irrevocable" trust documents that permits John Gill to appoint trust protectors. Rather, the Cornerstone Trust document states that a trust protector "may be replaced by a unanimous vote of then-subsisting Trustees" and that the executive trustee will assume the powers and responsibilities of the trust protector in the event of a vacancy. Cornerstone Trust ¶¶ 15.2a, 15.2b.

In a remarkable display of circular reasoning, Loren Gill maintains that he had authority, as trust protector, to convene a meeting and have Van Gasken, Hartshorn, Troy Sinclair, and Janet Smith removed as trustees and then to appoint Mike Gill and Joe Gill as new trustees. Loren Gill Decl. ¶¶ 10-13. After the replacement of the former trustees with the new trustees, those new trustees confirmed Loren Gill as the trust protector. *Id.* ¶ 13. The problem with this argument is that Loren Gill was not the duly appointed trust protector when he attempted to

8

replace the former trustees. Therefore, the attempted appointment of new trustees is void and has no legal effect. And, Loren Gill's subsequent confirmation as trust protector by his "new trustees" is likewise void because those "new trustees" were not in fact duly appointed trustees and thus had no legal authority to make that appointment or confirmation. Accordingly, Loren Gill's declaration does not establish that Loren Gill was appointed trust protector of the Cornerstone Trust or any other trust.

### III. The Trustees

The following facts regarding the chronology of the trustees are undisputed. As discussed above, the initial trustee of the Cornerstone Trust was Kevin Hartshorn, and the initial trustees of the real estate holding trusts were Daniel Van Gasken, Wallace Whitten, and Robert Hurst. Robert Hurst resigned from his position as trustee of the real estate holding trusts and that Steve Thomas replaced him in 2004. Thomas held a trustee position until he resigned in 2006.

According to the Hartshorn Defendants, Janet Smith replaced Thomas as trustee in 2006. *See, e.g.,* Smith Dep. 29:9-17, ECF No. 60-15. Loren Gill disputes this assertion, contending that he was "voted in by the trustees" to be a trustee on all of the real estate holding trusts in 2006. Loren Gill Decl. ¶ 4. Loren Gill also asserts, however, that he resigned from his

9

position as trustee on all of those trusts on July 30, 2011. *Id.* ¶ 6. The question then arises whether he was reappointed trustee after he resigned effective July 30, 2011. Although Loren Gill avers that he, as trust protector, appointed other individuals to serve as trustees of the real estate holding trusts in 2011, *id.* ¶ 13, which appointments this Court has previously found were void, there is no assertion that Loren Gill was reappointed as a trustee following his resignation. Based on Loren Gill's own declaration, therefore, Loren Gill is not a trustee of the real estate holding trusts, and there is no genuine fact dispute on this issue.

The remaining question is whether there is a fact dispute regarding Whitten's status as trustee. Again, it is undisputed that Whitten was an initial trustee of the real estate holding trusts and that he served in that role until 2011. According to the Hartshorn Defendants, Whitten was found to be unable to continue serving as trustee, and he was terminated and replaced. Van Gasken Decl. ¶ 8, ECF No. 60-7. In contrast, according to Loren Gill, Whitten remained a trustee of the real estate holding trusts. Loren Gill Decl. ¶ 13. This assertion, however, is based on Loren Gill's claim that he was trust protector with authority to appoint and remove trustees. As discussed above, there is no evidence to create a fact dispute that Loren Gill was the trust protector. Rather, the

Cornerstone Trust's clear terms give the Cornerstone Trust's executive trustee, Hartshorn, the authority to assume the powers of trust protector. And only the trustees who have been appointed consistent with the provisions of the trust can remove Hartshorn as trust protector, which they have not done. Therefore, Loren Gill's declaration is not sufficient to create a fact question on this point, and the undisputed facts establish that Whitten's trustee status was terminated.

## CONCLUSION

As discussed above, Loren Gill's own declaration establishes that Loren Gill is not a trustee of the real estate holding trusts. The contention that Whitten remained a trustee following 2011 depends on Loren Gill's assertion that he became trust protector. There is, however, no evidence to create a genuine fact dispute on this point. For all of these reasons, the Court concludes that Loren Gill and Whitten are not trustees of the real estate holding trusts, so the Hartshorn Defendants' summary judgment motion (ECF No. 60) is granted.

IT IS SO ORDERED, this 31st day of May, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE