IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KAREN GILL, *et al.*,              *

    Plaintiffs,              *

vs.                              *          CASE NO. 4:12-CV-77 (CDL)

KEVIN HARTSHORN, *et al.*,         *

    Defendants.              *

_____

O R D E R

Truth is sometimes stranger than fiction.[1]  And this case confirms it: a successful businessman accumulates a substantial rental property portfolio, decides to take a vow of poverty, donates everything to a trust constructed by a "charitable society" that focuses upon the lymphatic system as the source of good health, becomes a minister within that society, and retains the right to manage the property he has conveyed to the trust until he flees the country as a fugitive from justice days before he is supposed to report to prison.  After his departure, disputes arise between his brothers, former business associates, and children as to how the trust should be managed and who the trust beneficiaries are.

---

[1] Mark Twain actually said, "Truth is stranger than fiction, but it is because Fiction is obliged to stick to possibilities; Truth isn't." Mark Twain, *Following the Equator* 156 (1897).  Put another way, "You just can't make this stuff up."

I.   **The Central, But Absent, Figure: John Gill**

Although he is not a party to this action, John Gill is at the center of this "strange but true" story.   John Gill accumulated a considerable rental property portfolio, which he actively managed.   Apparently motivated, at least in part, by aggressive tax planning considerations, John Gill took a vow of poverty and transferred all of his property to the Ten Talents Ministry of the Order of the International Academy of Lymphology.   The legal documents, presumably designed to separate him from his assets for tax purposes but leave him in control of them for all practical purposes, are at best unduly complicated and at worst incomprehensible.   Each rental property was placed into a single asset property trust, and the sole beneficiary of all the single asset property trusts is the Gill Family Cornerstone Trust ("Cornerstone Trust").   Although John Gill transferred legal title to the property, he continued to manage the rental properties and the trusts as a missionary and minister of the Healing Water Ministry of the International Academy of Lymphology.   He was assisted by representatives of his ministry and other real estate managers, but it appears clear that John Gill had complete control over the trusts and real estate until he ran into trouble with the law and fled the country shortly before he was supposed to report to prison in 2009.   Although John Gill attempted to manage the trusts and

real estate as a fugitive, his continued absence created a void and, perhaps for some, an opportunity. Now his children, brothers, and former business associates fight for control of the trusts.

## II.   The Parties and Claims

The Plaintiffs are John Gill's children, Lauren Gill and K.G., a minor. K.G.'s claims are asserted by her mother and John Gill's former wife, Karen Gill. Plaintiffs asserted claims against John Gill's former business associates who presently manage the rental properties and trusts and the business entities with which they are affiliated. These Defendants include Kevin Hartshorn, Daniel Van Gasken, Jay Nichols, Eastern Property Development, LLC, South East Enterprises Group, LLC, EPD 1 Holding Trust, EPD 2 Holding Trust, SEE Holding Trust, The Church of Compassionate Service, and The Compassionate Order of Service of The Church of Compassionate Service ("Hartshorn Defendants"). Plaintiffs maintain that they are beneficiaries of the Cornerstone Trust and that the trust is irrevocable. Their initial complaint also included allegations that the Hartshorn Defendants violated their fiduciary duty to Plaintiffs. Those breach of fiduciary duty claims against the Hartshorn Defendants were subsequently settled.

Plaintiffs also named Loren Gill, who is John's brother, and Elm Leasing, LLC, a company controlled by Loren Gill, ("Gill

Defendants") as Defendants because Loren Gill has asserted that he has legal authority to control the trusts, and he disputes that the Cornerstone Trust is irrevocable.   Plaintiffs also assert claims against the Gill Defendants based on Plaintiffs' contention that the properties owned by Elm Leasing were purchased with money that was impermissibly diverted from the Cornerstone Trust and the trusts that benefit it.   The Gill Defendants have a cross-claim against the Hartshorn Defendants regarding rental proceeds collected by the Hartshorn Defendants that allegedly should have been paid to Elm Leasing.   Defendant Daniel Van Gasken has a cross-claim against the Gill Defendants on behalf of the single asset property trusts that allegedly loaned money to Elm Leasing so that Elm Leasing could purchase its rental properties.

Finally, Michael Gill, Steve Thomas, and Wallace Whitten have intervened as Plaintiffs ("Intervenors").   They claim that they should control the various real estate trusts.   Michael Gill is John Gill's brother.   Thomas and Whitten are John Gill's former business associates.

## III. The Summary Judgment Motions

Three partial summary judgment motions are presently pending.   These motions require the Court to interpret the Cornerstone Trust.   Generally, interpretation of such a legal document presents a legal question for the Court.   *Rose v.*

*Waldrip*, 316 Ga. App. 812, 815, 730 S.E.2d 529, 533 (2012).  And
if there are no ambiguities to be resolved by the jury, summary
judgment would be appropriate.  *See id.* (noting that "if the
language is plain and unambiguous and the intent is clear, the
court need look no further").  If a material provision of the
trust agreement is susceptible to more than one reasonable
interpretation after the Court applies traditional rules of
construction, however, then summary judgment may not be
appropriate.  *Ovrevik v. Ovrevik*, 254 Ga. App. 756, 758, 564
S.E.2d 8, 11 (2002).  Similarly, for other issues, summary
judgment may be granted only "if the movant shows that there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  In determining whether a *genuine* dispute of *material*
fact exists to defeat a motion for summary judgment, the
evidence is viewed in the light most favorable to the party
opposing summary judgment, drawing all justifiable inferences in
the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant
or necessary to the outcome of the suit.  *Id.* at 248.  A factual
dispute is *genuine* if the evidence would allow a reasonable jury
to return a verdict for the nonmoving party.  *Id.*

Plaintiffs move for partial summary judgment seeking a
construction of the Cornerstone Trust that would establish that

they are beneficiaries of the trust and that the trust is irrevocable.  As discussed below, that motion (ECF No. 104) is granted to the extent set forth in this Order.  The Hartshorn Defendants move for partial summary judgment on the trust-related cross-claims of Loren Gill and the trust-related claims of Whitten.  As discussed below, that motion (ECF No. 106) is granted in part and denied in part.  The Gill Defendants move for partial summary judgment on the claims and cross-claims related to Elm Leasing.  For the reasons set forth below, that motion (ECF No. 105) is denied.

A.    Plaintiffs' Summary Judgment Motion (ECF No. 104)

Plaintiffs seek a declaration by the Court that they are beneficiaries of the Cornerstone Trust and that the Cornerstone Trust is an irrevocable trust.  They contend that the language of the Cornerstone Trust unambiguously supports their position, and that these issues can therefore be decided as a matter of law.  The Hartshorn Defendants agree that the Cornerstone Trust is irrevocable and that Plaintiffs are beneficiaries of the Cornerstone Trust.[2]  The Gill Defendants and Intervenors argue that John Gill was the sole beneficiary of the Cornerstone Trust and that as the settlor and sole beneficiary of the trust, he could revoke the trust, which they claim he did.  They oppose

---

[2] Plaintiffs initially pursued breach of trust claims against the Hartshorn Defendants and sought summary judgment on those claims. Plaintiffs settled all of their claims with the Hartshorn Defendants and withdrew that portion of their summary judgment motion.

Plaintiff's motion for summary judgment, claiming that genuine fact disputes exist on this issue.

The fundamental issues presented by Plaintiffs' summary judgment motion are whether the Cornerstone Trust is irrevocable and whether Plaintiffs are beneficiaries under the Trust. "The cardinal rule in construing a trust instrument involves discerning the intent of the settlor and [effectuating] that intent within the language used and within what the law will permit." *SunTrust Bank v. Merritt*, 272 Ga. App. 485, 488, 612 S.E.2d 818, 821 (2005) (alteration in original) (internal quotation marks omitted). The starting point, and in this case the ending point, for determining whether the Cornerstone Trust is irrevocable and who the beneficiaries are is the actual language of the Cornerstone Trust.

John Gill settled the Cornerstone Trust. Hartshorn Defs.' 1st Mot. for Summ. J. Ex. A, Decl. of Trust for Gill Family Cornerstone Trust ("Cornerstone Trust Decl.") at 2, ECF No. 60-3.[3] The Cornerstone Trust Declaration is dated April 1, 1999, but it was not signed until June 18, 1999. *Id.* at 2, 22. The Cornerstone Trust Declaration names Kevin Hartshorn as trustee. *Id.* at 3. The Cornerstone Trust states in at least ten places that it is "irrevocable." *See, e.g., id.* at 4 ¶ 2.1 ("The

---

[3] The Cornerstone Trust Declaration does not contain page numbers. For the sake of simplicity, the Court refers to the page numbers of the electronic version of the Cornerstone Trust, which is in the present record at ECF No. 60-3.

Declaration of Trust creates an irrevocable fiscal and estate planning Foundation/Cornerstone Trust . . . .   The trust has a purpose or reason for existence, and, upon execution, is irrevocable . . . ."); *id.* at 4 ¶ 2.3 ("The Gill Family Cornerstone Trust is formed to irrevocably accept and distribute assets in various forms . . . ."); *id.* at 4 ¶ 4.1 ("The Trustor creates this Voluntary Pure Constitutional Trust and irrevocably transfers to Trustees the property described on Exhibit 'A' . . . ."); *id.* at 5 ¶ 6.1 ("The purport of the Gill Family Cornerstone Trust instrument is to irrevocably convey property/assets to Trustee management which creates or constitutes a Trust estate for the benefit of the holders of Units of Beneficial Interest (UBIs) . . . .").

No one seriously disputes that the language in the Cornerstone Trust Declaration clearly establishes that the Trust is irrevocable.   It states in at least ten places that it is irrevocable.   Under Georgia law, "[a] settlor shall have no power to modify or revoke a trust in the absence of an express reservation of such power."   O.C.G.A. § 53-12-40(a).   Neither side pointed to any provision in the Cornerstone Trust Declaration establishing that John Gill expressly reserved the power to modify or revoke the trust.   Therefore, the unambiguous language in the Cornerstone Trust Declaration establishes that the Cornerstone Trust is irrevocable.

Intervenors and The Gill Defendants nonetheless argue that John Gill was the sole beneficiary of the Cornerstone Trust and that he therefore retained the power to modify or terminate the trust.   A settlor who is a trust's sole beneficiary may terminate the trust despite language stating that the trust is irrevocable.  *Cooper v. Trust Co. Bank*, 257 Ga. 272, 272, 357 S.E.2d 582, 582 (1987).  Obviously, if the settlor manifests an intention to give a beneficial interest in the trust property to someone else, then he is not the sole beneficiary.

The Gill Defendants and Intervenors ignore the following language of the Cornerstone Trust Declaration:  "The Trustor [John Gill] will have no retained interest in the Gill Family Cornerstone Trust nor its assets, but does convey managerial and fiduciary powers to the Trustees."  Cornerstone Trust 4 ¶ 2.2. This language directly contradicts their position that John Gill was the sole beneficiary of the Trust.  Moreover, they also ignore the provisions of the Trust Declaration that clearly specify the beneficiaries of the Cornerstone Trust.  The Cornerstone Trust Declaration specifies the following classes of beneficiaries: (1) "Any/all natural and/or adopted children and grandchildren of the Trustor as a class of beneficiaries," (2) "The Healing Water Ministries Integrated Auxiliary of the Order of the IAL," and (3) "any other charitable Trusts or other

organizations as established by the Trustees of this entity for purposes of beneficial distribution." *Id.* at 9 ¶ 12.1.

The Intervenors and Gill Defendants argue that one can only become an actual beneficiary of the Trust through the issuance of "Units of Beneficial Interest" ("UBIs"). The Cornerstone Trust Declaration states that the trustee will hold the Trust property "for the benefit of the Beneficiaries who hold or lawfully acquire shares (Units of Beneficial Interest or UBIs) of beneficial interest in the Trust as noted by the Trustees." *Id.* at 4 ¶ 4.1; *see also id.* at 5 ¶ 6.1 ("The Trust estate [is] for the benefit of the holders of Units of Beneficial Interest (UBIs), held in joint tenancy Trust, with distributions by Trustees to be under a sprinkling provision."). The Cornerstone Trust Declaration also states, "Trustor distributes the UBIs to the Beneficiaries as witnessed by the Trustees. Upon distribution of the UBIs, the Trustor retains no reversionary, possessory or retained interest in the valuable assets/corpus conveyed into the Trust for management by the Trustees." *Id.* at 4 ¶ 4.1. Therefore, John Gill did seek to control "distributions" to beneficiaries through the issuance of UBIs. But the language of the Trust also clearly establishes that all of the UBIs were conveyed to the three classes of beneficiaries jointly when the Trust was established. *See id.* at 9 ¶ 12.1 ("100% of UBIs conveyed to the Beneficiaries as classes of

Beneficiaries.)   It then became the duty of the trustees, in their discretion as guided by the purposes of the trust, to determine how distributions should be made. *Id.* at 11 ¶ 12.12.

The Court finds that the language of the Cornerstone Trust Declaration clearly establishes three classes of beneficiaries, that John Gill's children are included as beneficiaries, that the language in the Trust regarding UBIs and the distribution of Trust assets does not eliminate John Gill's children as beneficiaries, and that the Cornerstone Trust is irrevocable. The fact that John Gill may have operated the Trust in a manner that was inconsistent with the requirements of the Trust does not amend the provisions of the Trust.[4]   Moreover, as explained in the following discussion, the Court is not persuaded by the arguments of Intervenors and the Gill Defendants that a "Trust Beneficiary Certificate" purportedly signed by John Gill and a

---

[4] A superficial review of the Trust Declaration and the subsequent conduct of John Gill and the Trustees could support the conclusion that ambiguities exist as to John Gill's intent in establishing the Cornerstone Trust.   But if those facts are construed in the manner that the Intervenors and the Gill Defendants suggest, they would also support the conclusion that John Gill never intended to create a legitimate trust where he truly conveyed his assets to a separate trust entity.   In its interpretation of the Trust and consideration of the facts, the Court must interpret those provisions and facts in a manner that will make the trust agreement enforceable and legitimate, if possible. *See Ovrevik v. Ovrevik*, 242 Ga. App. 95, 97, 527 S.E.2d 586, 588 (2000) ("In construing an express trust, we look first and foremost to the language therein and interpret that language to effectuate the intent of the settlors.   We turn to parol evidence only if the trust instrument is ambiguous[.]") (citation omitted).

"Letter of Direction" create a genuine factual dispute as to whether John Gill was the sole beneficiary.

Intervenors and the Gill Defendants contend that ninety UBIs were issued to the Healing Water Ministry of the International Academy of Lymphology and that no other UBIs were issued.  Given the Cornerstone Trust's statement that the trust is "for the benefit of the holders of Units of Beneficial Interest (UBIs)," Cornerstone Trust Decl. 5 ¶ 6.1, Intervenors and the Gill Defendants assert that the Healing Water Ministry of the International Academy of Lymphology, whose minister is John Gill, is the only beneficiary entitled to distributions from the Cornerstone Trust.

In support of their assertion that the Healing Water Ministry of the International Academy of Lymphology was issued ninety UBIs, Intervenors and the Gill Defendants rely on a "Trust Beneficiary Certificate" purportedly signed by John Gill and two witnesses.  Gill Defs.' Resp. to Pls.' 2d Mot. for Partial Summ. J. Ex. C, Trust Beneficiary Certificate, ECF No. 122-3.  Plaintiffs object to the Trust Beneficiary Certificate because Intervenors and the Gill Defendants did not point to any evidence to authenticate it.  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "To satisfy the requirement of authenticating or

identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Neither Intervenors nor the Gill Defendants pointed to any evidence to establish the authenticity of the Trust Beneficiary Certificate. The Court thus cannot consider the certificate. There is no admissible evidence establishing that UBIs were issued exclusively to the Healing Water Ministry of the International Academy of Lymphology.

Moreover, this inadmissible evidence is clearly contradicted by the Cornerstone Trust Declaration, which states, "Trustor distributes the UBIs to the Beneficiaries as witnessed by the Trustees." Cornerstone Trust Decl. 4 ¶ 4.1. The Trustee's minutes state that Hartshorn as Trustee recognizes the conveyance of assets to the Cornerstone Trust "and that said assets are hereby irrevocably accepted by said Trustee . . . in the best interest(s) of the Beneficiaries, therein defined." Gill Defs.' Resp. to Pls.' 2d Mot. for Partial Summ. J. Ex. A at 40, Trustee's Minutes, ECF No. 122-1. The minutes and the Trust Certificate submitted by Plaintiff both establish that the beneficiaries named in the Cornerstone Trust Declaration—including John Gill's children—"are the joint holders of the total One Hundred (100) Units of Beneficial Interest (UBIs)" in the Cornerstone Trust. Pls.' Reply in Supp. of Pls.' Mot. for

Summ. J. Ex. 1, Trust Certificate, ECF No. 144; *accord* Trustee's Minutes.[5]  The Trust also provides that after UBIs are issued to beneficiaries, they cannot be transferred without approval by the Trustees, Cornerstone Trust Decl. 10 ¶ 12.2b), and there is no evidence that the attempted transfer of ninety UBIs to the Healing Water Ministry of the International Academy of Lymphology was ever approved.  For all of these reasons, the Trust Beneficiary Certificate cannot establish that John Gill was the sole beneficiary of the Cornerstone Trust.[6]

The Gill Defendants and Intervenors also rely on a "Letter of Direction" dated June 18, 1999.  Gill Defs.' Resp. to Pls.' 2d Mot. for Partial Summ. J. Ex. B, Letter of Direction, ECF No. 122-2.  The Letter of Direction purports to be from John Gill to Kevin Hartshorn, although John Gill did not sign the letter. The Letter of Direction states that it is "direction(s) to the Executive Trustee from the Trustor."  *Id.*  The Letter of Direction further states that the Cornerstone Trust "shall have only one (1) beneficiary at this time even though the Gill

[5] The Court rejects the authenticity challenge to the Trust Certificate submitted by Plaintiffs.  Kevin Hartshorn signed the certificate, and it is consistent with his position that the Cornerstone Trust is irrevocable and that Plaintiffs are beneficiaries of the Cornerstone Trust.
[6] Intervenors and the Gill Defendants' argument also requires the Court to find that the Healing Water Ministry of the International Academy of Lymphology, which was listed in the Trust Declaration as a trust beneficiary, and John Gill, who was not listed as a beneficiary, are one and the same.  While this may be how John Gill and the trustees operated the trust as a practical matter, it conflicts with the actual language in the Trust Declaration.

14

Family Cornerstone Trust provides for three (3) classes of beneficiaries." *Id.* The letter instructs the trustees of all the trusts that benefit the Cornerstone Trust that they should "bypass Gill Family Cornerstone Trust and distribute monthly all their cash directly to the Healing Water Ministry, Integrated Auxiliary Chapter of the International Academy of Lymphology," whose "assigned Minister" was John Gill. *Id.* The letter further states that it "shall stand as clarification for the term other charities or charitable trusts" in paragraph 12.1 of the Cornerstone Trust: "any and all future charitable assignments and trusts funded buy [sic] the Gill Family Cornerstone Trust must be a subordinate to Healing Water Ministry IAC of the IAL. This is a private Ministry and No charities' [sic] outside the IAL shall ever be funded." *Id.* Finally, the letter states that John Gill's children "are not beneficiaries at this time but are listed as a class of beneficiaries and they will become eligible beneficiaries upon their thirty second birthday." *Id.*

There is a fact dispute regarding the authenticity of the Letter of Direction. The Gill Defendants assert that Loren Gill saw John Gill type the Letter of Direction and witnessed Kevin Hartshorn initial it. Loren Gill Dep. 21:15-24:4, ECF No. 64. Plaintiffs and the Hartshorn Defendants contend that the letter is a fake; Hartshorn testified that he did not initial the

document and did not see it until this litigation began. Hartshorn Dep. vol. IV 754:9-756:4, ECF No. 71.

Even assuming that the Letter of Direction is authentic for purposes of the present motions, the Letter does not change the Court's interpretation of the Cornerstone Trust.  The Gill Defendants contend that the Court may consider the Letter of Direction as parol evidence that clarifies ambiguities in the Cornerstone Trust.  "When the construction of an express trust is at issue, the court may hear parol evidence of the circumstances surrounding the settlor at the time of the execution of the trust and parol evidence to explain all ambiguities, both latent and patent."  O.C.G.A. § 53-12-27; *accord* O.C.G.A. § 24-3-3 (stating that "(a) All contemporaneous writings shall be admissible to explain each other" and that "(b) Parol evidence shall be admissible to explain all ambiguities, both latent and patent").  But "[p]arol contemporaneous evidence shall be generally inadmissible to contradict or vary the terms of a valid written instrument." O.C.G.A. § 24-3-1.

Intervenors and the Gill Defendants argue that the Letter of Direction merely "clarifies" the Cornerstone Trust Declaration and can therefore be considered as parol evidence of the settlor's intent.  But the Letter of Direction does not "clarify" the Cornerstone Trust Declaration.  It directly

16

conflicts with the Cornerstone Trust Declaration. The Cornerstone Trust declaration provides for three classes of beneficiaries: (1) "Any/all natural and/or adopted children and grandchildren of the Trustor," (2) "The Healing Water Ministries Integrated Auxiliary of the Order of the IAL," and (3) "any other charitable Trusts or other organizations as established by the Trustees of this entity for purposes of beneficial distribution." Cornerstone Trust Decl. 9 ¶ 12.1. The Letter of Direction, on the other hand, states that the Cornerstone Trust "shall have only one (1) beneficiary at this time even though [it] provides for three (3) classes of beneficiaries." Letter of Direction.

Because the Letter of Direction seeks to modify a material term of the Cornerstone Trust, the Court must determine whether the unsigned Letter of Direction has any effect. Even if the Court assumed that John Gill expressly reserved the right to modify the Cornerstone Trust Declaration (which he did not), the Letter of Direction does not comply with O.C.G.A. § 53-12-40(c), which requires that "[a]ny revocation or modification of an express trust shall be in writing and signed by the settlor." John Gill did not sign the Letter of Direction, and there is no evidence that Kevin Hartshorn was acting as John Gill's agent acting under a power of attorney containing express

authorization when he allegedly initialed it.   The Letter of Direction thus does not modify the Cornerstone Trust.

In summary, the Cornerstone Trust Declaration clearly manifests John Gill's intention to give a beneficial interest in the trust property to his children.   The admissible evidence in the present record does not create a genuine factual dispute as to whether John Gill is the sole beneficiary of the Cornerstone Trust, whether he retained the right to modify the Cornerstone Trust, or whether he validly modified the Cornerstone Trust. There is also no admissible evidence John Gill issued UBIs in the Cornerstone Trust exclusively to the Healing Water Ministry of the International Academy of Lymphology.   Rather, the evidence in the present record establishes that all three classes of beneficiaries jointly hold the UBIs in the Cornerstone Trust.   For all of these reasons, the Cornerstone Trust is irrevocable, and the beneficiaries are the three classes of beneficiaries listed in ¶ 12.1 of the Cornerstone Trust Declaration.[7]

---

[7] Plaintiffs also seek a declaration regarding the phrase "any other charitable Trusts or other organizations."   Cornerstone Trust Decl. 9 ¶ 12.1.   Based on the present record, there does not appear to be an actual controversy between the parties on this issue.   Although the parties disagree about the meaning of the phrase, the disagreement is purely academic at this time because the only "other organization" named by the Cornerstone Trust's trustee as a separate class for beneficial distribution is the Church of Compassionate Service, which the Hartshorn Defendants assert is a charitable organization.   Given the absence of an actual controversy regarding the phrase, the Court finds no reason to construe it.

B.   Hartshorn Defendants' Summary Judgment Motion (ECF No. 106)

Loren Gill filed several cross-claims against the Hartshorn Defendants that are related to the Cornerstone Trust and trusts that benefit the Cornerstone Trust.   Although Michael Gill and Wallace Whitten had not been joined as parties when Loren Gill filed his cross-claims, they joined the cross-claims and were later permitted to file an intervenor complaint alleging similar claims against the Hartshorn Defendants.   The Hartshorn Defendants seek summary judgment on (1) Loren Gill's cross-claims predicated on his claimed status as "trust protector" of the Cornerstone Trust, (2) Loren Gill's cross-claims predicated on his claimed status as trustee of the real estate holding trusts, and (3) Whitten's cross-claims predicated on his status as a trustee of the Cornerstone Trust and the real estate holding trusts.   The Hartshorn Defendants did not move for summary judgment on Michael Gill's claims.

1.   *Loren Gill's Cross-Claims*

The Court previously ruled that Loren Gill is not the trust protector of the Cornerstone Trust and is not a trustee on any of the real estate holding trusts.   *Gill v. Hartshorn*, No. 4:12-CV-77 (CDL), 2013 WL 2406554, at *3-*4 (M.D. Ga. May 31, 2013). Loren Gill did not seek reconsideration of the Court's previous rulings and does not appear to do so now.   The Court therefore

grants the Hartshorn Defendants' summary judgment motion as to Loren Gill's cross-claims brought as trust protector of the Cornerstone Trust and trustee of the real estate holding trusts.

In response to the Hartshorn Defendants' summary judgment motion, Loren Gill asserted that he has standing to bring his cross-claims as a trustee of certain business holding trusts. The Hartshorn Defendants did not move for summary judgment as to cross-claims Loren Gill brought as trustee of the business holding trusts, and those cross-claims were clearly raised in the Answer & Cross-Claim of Loren Gill and Elm Leasing, LLC (ECF No. 31). In their reply brief, the Hartshorn Defendants for the first time questioned whether Loren Gill may pursue his cross-claims based on his undisputed status as a trustee on certain business holding trusts. The Court "do[es] not consider arguments raised for the first time in a reply brief," so this issue is not properly before the Court. *Wetherbee v. S. Co.*, 423 F. App'x 933, 934 (11th Cir. 2011) (per curiam).

Loren Gill also argues in response to the Hartshorn Defendants' summary judgment motion that he has standing to bring his cross-claims because he is a beneficiary of the Cornerstone Trust. This is the first time Loren Gill has asserted that he is a beneficiary of the Cornerstone Trust, and he did not predicate any of his cross-claims on his alleged beneficiary status. *See* Answer & Cross-Cl. of Gill Defs.,

Whitten & Michael Gill 20 ¶¶ 2-3, ECF No. 31.  The Court will not permit Loren Gill to amend his cross-claims through argument in a brief opposing summary judgment.  Moreover, Loren Gill did not point to any admissible evidence that he actually is a beneficiary of the Cornerstone Trust.  Rather, he pointed to an unauthenticated "Assignment" certificate which states that Loren Gill is an associate minister of "Ten Talents Ministry Integrated Auxiliary Chapter of the International Academy of Life" and "Healing Water Ministry Integrated Auxiliary Chapter of the International Academy of Life."  Gill Defs.' Resp. to Hartshorn Defs.' Mot. for Partial Summ. J. Ex. A, Assignment Certificate 2-3, ECF No. 120-1.  The Hartshorn Defendants object to the certificate because the Gill Defendants did not point to any evidence to authenticate it.  And, even if the document had been authenticated and could be considered, the Gill Defendants pointed to no evidence that the "Healing Water Ministry Integrated Auxiliary Chapter of the International Academy of *Life*" is the same as the Healing Water Ministry of the International Academy of *Lymphology*.[8]  Also, the certificate states that Loren Gill was appointed for a one-year term beginning in October of 2011, but there is no evidence that Loren Gill's term was renewed or extended.  *Id.* at 2-3.  For all

---

[8] Intervenors *allege* that the two entities are the same, Intervenor Compl. 3 ¶ 14, ECF No. 82, but they did not point to any evidence to *prove* it.

of these reasons, Loren Gill cannot pursue his cross-claims as a beneficiary of the Cornerstone Trust.

2.  *Whitten's Cross-Claims*

The Court previously ruled that Whitten is not a trustee of any of the real estate holding trusts. *Gill*, 2013 WL 2406554, at *4. Whitten did not seek reconsideration of the Court's previous ruling and does not appear to do so now. The Court therefore grants the Hartshorn Defendants' summary judgment motion on Whitten's cross-claims brought as trustee of the real estate holding trusts.

Turning to Whitten's cross-claims in his capacity as trustee of the Cornerstone Trust, Whitten initially asserted that he did "not serve as a trustee of the Cornerstone Trust." Answer & Cross-Cl. of Gill Defs., Whitten & Michael Gill 20 ¶ 4. Whitten also stated in a 2011 declaration offered in a related case that he was not a trustee of the Cornerstone Trust. Whitten Decl. ¶ 5, ECF No. 9 in *E. Prop. Dev., LLC v. Gill*, 4:11-CV-62. Whitten has, however, asserted that he is a trustee of the Cornerstone Trust since late 2012, when he filed his Motion to Intervene. Mot. to Intervene ¶ 1, ECF No. 50. Specifically, Whitten contends that he was appointed as trustee of the Cornerstone Trust in 2005 or 2006. *Id.* Ex. B, Whitten Decl. 1, ECF No. 50-2; *accord* Intervenor Resp. to Hartshorn Defs.' Mot. for Partial Summ. J. Ex. A, 2d Thomas Decl. 1, ECF

No. 115 at 8.  Whitten further asserts that in 2010, Daniel Van Gasken deceived Whitten into believing that he had been removed as a trustee of the Cornerstone Trust even though he was never actually removed.  Whitten Decl. 2.  Whitten discovered the deception in 2012 when Intervenor Steve Thomas contacted Whitten to tell him that he had not been removed as a trustee of the Cornerstone Trust.  *Id.*

The Hartshorn Defendants acknowledge that the Court may not disregard self-serving testimony in determining whether genuine fact disputes exist for trial.  *See, e.g., Newsome v. Chatham Cnty. Detention Ctr.*, 256 F. App'x 342, 346 (11th Cir. 2007) (per curiam).  They contend, however, that Whitten's 2012 declaration should be disregarded as a sham.  The general rule is that "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation."  *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656 (11th Cir. 1984).  Here, Whitten's 2012 declaration contradicts his 2011 declaration, but Whitten does offer an explanation: Van Gasken deceived Whitten into believing that he had been removed as a trustee, and Whitten did not find out about the deception until after the cross-claim had been filed.  While a jury may well find that Whitten's account of the facts is not credible, that is not the Court's call to make at

the summary judgment stage.   There is a fact dispute as to whether Whitten is a trustee of the Cornerstone Trust, and the Hartshorn Defendants' summary judgment motion as to Whitten's claims in that capacity is denied.

In summary, the Court grants the Hartshorn Defendants' summary judgment motion as to Loren Gill's cross-claims brought as trust protector of the Cornerstone Trust, Loren Gill's cross-claims brought as trustee of the real estate holding trusts, and Whitten's cross-claims brought as trustee of the real estate holding trusts.   Loren Gill may not pursue any claims as a beneficiary of the Cornerstone Trust.

The Court denies the Hartshorn Defendants' summary judgment motion as to Whitten's claims brought in his capacity as a trustee of the Cornerstone Trust because a genuine fact dispute exists regarding Whitten's trustee status.   Loren Gill's cross-claims predicated on his status as a trustee of several business holding trusts remain pending, as do Michael Gill's trust-related claims against the Hartshorn Defendants.

C.   Gill Defendants' Summary Judgment Motion (ECF No. 105)

In addition to their other claims, the parties have disputes regarding Elm Leasing, LLC.  The Court previously found that Loren Gill is the owner of Elm Leasing, which owns several rental properties in Columbus, Georgia.  *E. Prop. Dev. LLC v. Gill*, No. 4:11-CV-62 (CDL), 2012 WL 1424664, at *1 (M.D. Ga.

Apr. 24, 2012).  Loren Gill asserts that Defendants Eastern Property Development, LLC and South East Enterprise Group, LLC converted and misappropriated rental proceeds belonging to Elm Leasing.  Defendant Daniel Van Gasken, a trustee of the single asset property trusts that benefit the Cornerstone Trust, argues that funds from the single asset property trusts were used to purchase and maintain properties owned by Elm Leasing, and he brought a cross-claim against Elm Leasing asking that the funds be returned to the single asset property trusts.[9]  Plaintiffs likewise assert several claims based on their contention that Elm Leasing received funds from the single asset property trusts that must be returned.  The Gill Defendants moved for partial summary judgment, asserting that Eastern Property and South East Enterprise owe Elm Properties $609,747.56 in rental proceeds. The Gill Defendants also seek summary judgment as to Plaintiffs' claims and Van Gasken's cross-claim related to Elm Leasing.

    In opposition to the Gill Defendants' summary judgment motion, Plaintiffs and Van Gasken relied on the affidavit of

---

[9] Van Gasken brought his cross-claims as trustee of the single asset trusts.  Loren Gill argues that Van Gasken cannot bring any claims as trustee of the single asset trusts because he was not sued in his capacity as trustee for a specific trust.  In support of this argument, Loren Gill cites a case regarding the distinction between a lawsuit against a government official in his official capacity and a lawsuit against a government official in his individual capacity.  *Bd. of Comm'rs of Glynn Cnty. v. Johnson*, 311 Ga. App. 867, 717 S.E.2d 272 (2011).  That case has no application here.  Loren Gill's breach of trust claims against Van Gasken are based on Van Gasken's acts and omissions as trustee of the single asset trusts.  Van Gasken may bring cross-claims in his capacity as trustee of the single asset trusts.

Robert Behar.  Pls.' Resp. to Gill Defs.' Mot. for Partial Summ.
J. Attach. 3, Behar Aff., ECF No. 128-3.  The Gill Defendants
contend that the Court must disregard Behar's affidavit because
his conclusions lack credible support.  Behar is a certified
public accountant.  Behar Aff. ¶ 2.  He reviewed the records of
the Cornerstone Trust and related trusts.  *Id.* ¶¶ 3-4.  Behar's
report and affidavit are based on that review.  Gill Defendants
may quarrel with Behar's interpretation of the records, but that
does not mean that Behar's conclusions lack credible support.
The Court declines to exclude Behar's affidavit.

It is undisputed that Elm Leasing owns eight tracts of real
property in Columbus, Georgia.  It is also undisputed that Gill
Companies, LLC managed the properties owned by Elm Leasing until
John Gill fled the country.  After John Gill became a fugitive,
Eastern Property took over management of the rental properties,
including Elm Leasing's properties.  Eastern Property is managed
by Hartshorn.  It is undisputed that Eastern Property managed
the properties owned by Elm Leasing and collected rents
generated by those properties from August 2010 until March 2012.
Based on the present record, including Behar's affidavit,
genuine fact disputes exist as to whether Eastern Property has
been compensated for managing the Elm Leasing properties.
Therefore, based on the present record, the Court cannot

determine what, if any, rental proceeds must be remitted to Loren Gill.

There are also significant factual disputes regarding whose funds were used to purchase the Elm Leasing Properties.  There is evidence that Loren Gill used funds from his pay-day loan stores to pay mortgages on Elm Leasing properties.  But there is also evidence that the funds that paid for the Elm Leasing properties were taken from the Cornerstone Trust and the single asset trusts that benefit the Cornerstone Trust.  Behar Aff. ¶¶ 5, 15-22.  Based on the obvious fact disputes in the present record, Loren Gill is not entitled to summary judgment on his Elm Leasing claims, and he is not entitled to summary judgment as to the Elm Leasing claims of Plaintiffs and Van Gasken.

                              CONCLUSION

For the reasons and to the extent explained in this Order, Plaintiffs' Second Motion for Partial Summary Judgment (ECF No. 104) is granted.  The Hartshorn Defendants' Motion for Partial Summary Judgment (ECF No. 106) is granted in part and denied in part.  The Gill Defendants' Motion for Partial Summary Judgment (ECF No. 105) is denied.

IT IS SO ORDERED, this 3rd day of January, 2014.

                         S/Clay D. Land
                         ———————————————————
                              CLAY D. LAND
                         UNITED STATES DISTRICT JUDGE