```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

| | |
|---|---|
| KAREN GILL, *et al.*, | * |
| Plaintiffs, | * |
| vs. | *   CASE NO. 4:12-CV-77 (CDL) |
| KEVIN HARTSHORN, *et al.*, | * |
| Defendants. | * |

O R D E R

Plaintiffs, beneficiaries of the Gill Family Cornerstone Trust, seek Court approval of their settlement with one of the trustees of the Gill Family Cornerstone Trust, Kevin Hartshorn, and one of the trustees of the trusts that benefit the Cornerstone Trust, Daniel Van Gasken.  Other individuals who contend that they are trustees of the Cornerstone Trust or related trusts object to the settlement.  Defendants Loren Gill and Elm Leasing, LLC argue that if the settlement is approved over their objection, the Court will no longer have subject matter jurisdiction, so this action should be dismissed.  For the following reasons, the Court approves the settlement and finds that it still has subject matter jurisdiction over the remaining controversy.  Accordingly, the motion to void the settlement (ECF No. 179) is denied, the motion to approve the settlement (ECF No. 201) is granted, and the motions to dismiss (ECF Nos. 180 & 209) are denied.  In addition

to the issues related to the settlement, Kevin Hartshorn and Daniel Van Gasken ("Hartshorn Defendants") seek leave to answer the Intervenor Complaint out of time. That motion (ECF No. 176) is granted.

## FACTUAL BACKGROUND

Fifteen years ago, a local businessman named John Gill took a vow of poverty designed to separate him from his substantial real estate holdings for tax purposes but leave him in control of those assets for all practical purposes. Each piece of property was placed into a single asset property trust, and the sole beneficiary of all of the single asset trusts is the Gill Family Cornerstone Trust. The original beneficiaries of the Cornerstone Trust included John Gill's children and an organization called the Healing Water Ministries Integrated Auxiliary of the Order of the International Academy of Lymphology. John Gill became a missionary, minister, and health educator of the Order of the International Academy of Lymphology and, assisted by several business associates, continued to manage the property he had transferred to the trusts (and received remuneration for his efforts) until he was convicted of a felony in Florida and fled the country as a fugitive from justice shortly before he was supposed to report to prison in 2009.

John Gill attempted to manage the trusts and real estate as a fugitive, but he lost his grasp over them. In his absence, John

Gill's former business associates, Kevin Hartshorn and Daniel Van Gasken, who are trustees of the trusts, took over management of the trusts and rental properties. John Gill's brother Loren Gill attempted to assume control over the trusts and rental properties, but his efforts failed.

Hartshorn continues to serve as trustee of the Cornerstone Trust. Under the Cornerstone Trust, Hartshorn is permitted to establish "charitable Trusts or other organizations . . . for purposes of beneficial distribution." Hartshorn Defs.' 1st Mot. for Summ. J. Ex. A, Decl. of Trust for the Gill Family Cornerstone Trust ("Cornerstone Trust Decl.") at 9 ¶ 12.1, ECF No. 60-3.[1] Hartshorn established The Compassionate Order of Service of The Church of Compassionate Service—an organization of which he is a minister—and designated it as a beneficiary of the Cornerstone Trust. Again, the other beneficiaries of the Cornerstone Trust are Plaintiffs and the Healing Water Ministries Integrated Auxiliary of the Order of the International Academy of Lymphology. The Cornerstone Trust provides that "distributions will be at the sole discretion of the Trustees" and "will be handled under a sprinkling provision" that permits the trustees to decide which beneficiaries will receive a distribution and the amount of each distribution. *Id.* at 11 ¶ 12.12.

---

[1] The Cornerstone Trust Declaration does not contain page numbers. For the sake of simplicity, the Court refers to the page numbers of the electronic version of the Cornerstone Trust Declaration, which is in the present record at ECF No. 60-3.

3

For several years, John Gill's children, brothers, and former business associates have feuded over control of the trusts. Plaintiffs in this action are John Gill's children, Lauren Gill and K.G., a minor. They accused the Hartshorn Defendants of mismanaging the trusts and diverting trust assets to themselves or to entities with which they are affiliated, including The Church of Compassionate Service.[2] Plaintiffs also accused their uncle Loren Gill of defrauding the Hartshorn Defendants into diverting trust assets to a company Loren Gill owns called Elm Leasing, LLC. Van Gasken accused Loren Gill of conversion based on the diversion of single asset trust assets to Elm Leasing. Loren Gill accused the Hartshorn Defendants, who managed Elm Leasing for a while, of pocketing Elm Leasing revenue instead of giving it to him. More recently, John Gill's other brother, Michael Gill, and two former business associates, Steve Thomas and Wallace Whitten, joined the feud, contending that they are trustees and/or beneficiaries of the trusts and accusing the Hartshorn Defendants of breach of trust.

After obtaining legal counsel, Plaintiffs, who are John Gill's children and beneficiaries of the Cornerstone Trust, approached counsel for the Hartshorn Defendants in an attempt to

---

[2] The Hartshorn Defendants also include Jay Nicol and several entities controlled by Hartshorn and Van Gasken: Eastern Property Development, LLC, South East Enterprises Group, LLC, EPD 1 Holding Trust, EPD 2 Holding Trust, SEE Holding Trust, The Church of Compassionate Service, and The Compassionate Order of Service of The Church of Compassionate Service.

4

extricate themselves from the problems created by the confusing Cornerstone Trust while protecting their beneficial interests in the trust consistent with John Gill's intentions in creating the trust.  Those efforts resulted in a settlement agreement with the Hartshorn Defendants.  The settlement agreement resolves Plaintiffs' breach of trust claims against the Hartshorn Defendants and provides that 40% of the assets that are currently in single asset trusts that benefit the Cornerstone Trust will be placed into a separate trust for the benefit of Plaintiffs.  Once the settlement is fully completed, Plaintiffs will waive their right to the remaining 60% of trust assets.  The settlement does not purport to extinguish any breach of trust claims by other individuals or entities who have standing to pursue such claims.  It also does not release Plaintiffs' right to pursue claims against Loren Gill and Elm Leasing for the misappropriation of trust assets.

## DISCUSSION

**I.   The Settlement Agreement is Reasonable and Permissible**

Plaintiffs and the Hartshorn Defendants seek approval of their settlement pursuant to O.C.G.A. § 29-3-3, which requires court approval for the settlement of a minor's claim under certain circumstances.  Loren Gill, Michael Gill, Thomas, and Whitten object to the settlement between Plaintiffs and the Hartshorn Defendants.  They argue that the settlement agreement amounts to

impermissible self-dealing by the Hartshorn Defendants and should be rejected on that basis. They further contend that the trust documents do not give the Hartshorn Defendants authority to take the actions contemplated by the settlement. The Court addresses each argument in turn.

First, the Court must determine whether the settlement was entered into in good faith, is in the best interest of the beneficiaries, and is consistent with the trust settlor's intent. *See* O.C.G.A. § 53-12-261(b)(22)(A)-(B) (permitting trustee to settle claims involving the trust as long as there is no "fraud, bad faith, or gross negligence" on the part of the trustee). Under this standard, the settlement should be approved. The Court previously concluded that Plaintiffs, the only children of John Gill, are undisputedly beneficiaries of the Cornerstone Trust. *Gill v. Hartshorn*, No. 4:12-CV-77, 2014 WL 29450, at *7 (M.D. Ga. Jan. 3, 2014) ("[T]he Cornerstone Trust Declaration clearly manifests John Gill's intention to give a beneficial interest in the trust property to his children."). Plaintiffs will clearly benefit from the settlement. They are provided with substantial trust assets that will be used for their sole benefit, and Plaintiffs will be extricated from the Cornerstone Trust and its two other (dubious) beneficiaries: The Compassionate Order of Service of The Church of Compassionate Service and the Healing Water Ministries Integrated Auxiliary of the Order of the

International Academy of Lymphology. Even if Healing Water and the Church of Compassionate Service are legitimate, Plaintiffs will benefit because their interests are potentially in conflict with those other beneficiaries; under the settlement, Plaintiffs will no longer be subject to the Cornerstone Trust's "sprinkling provision" that permits all of the distributions to be given to the other beneficiaries and none to Plaintiffs. The settlement also makes adequate provision for the interests of the other beneficiaries by leaving 60% of the assets for their benefit. And the Court notes the Hartshorn Defendants are closely identified with these other beneficiaries and have concluded that the settlement is also in their best interest. The Court finds that the settlement is clearly in the best interest of all beneficiaries and is consistent with the trust settlor's intent.

Second, the Court rejects any argument that the Hartshorn Defendants did not have the authority to enter into the settlement. The Cornerstone Trust and single asset property trusts provide the trustees, Hartshorn and Van Gasken, with broad discretion. *See, e.g.,* Cornerstone Trust Decl. at 14 ¶ 14.1e.3 (giving trustees "power to create other organizations, including Trust[s]: both revocable and irrevocable, using all or part of the Gill Family Cornerstone Trust organization's assets to fund such organizations"); Hartshorn Defs.' 1st Mot. for Summ. J. Ex. C, Decl. of Trust for the 202 Oakridge Commercial Real Estate Holding

7

Trust at 7 ¶ 15d.10, ECF No. 60-6 (giving trustees of single asset property trust "power . . . to transfer [trust] assets to the [Cornerstone] Trust"). The broad discretion conferred by the trust declarations allows for this settlement.

Third, the Court finds that the settlement does not amount to impermissible self-dealing. Although Plaintiffs initially brought this action against the Hartshorn Defendants alleging that they had breached their fiduciary duties to Plaintiffs and although the settlement does not require the Hartshorn Defendants to make any payments from their personal assets to consummate the settlement, the Court nevertheless finds the settlement to be appropriate and not the result of impermissible self-dealing. Generally, a trustee "must not place himself in a position where his personal interest will conflict with the interest of the beneficiary." *Hanson v. First State Bank & Trust Co.*, 259 Ga. 710, 711, 385 S.E.2d 266, 267 (1989) (internal quotation marks omitted). But where the trustee is also a beneficiary and the settlor knows of this conflict, the trustee may continue to act in that capacity as long as he operates within the discretion conferred by the trust declaration. *See Lovett v. Peavy*, 253 Ga. 79, 81, 316 S.E.2d 754, 757 (1984) (finding that where settlor designated trust's remainderman as trustee knowing that the trustee's interests conflicted with the beneficiary's, that conflict did not justify removal of the trustee).

8

Here, John Gill knew that there was a potential conflict when he drafted the Cornerstone Trust so that the trustee was permitted to establish new beneficiaries. John Gill also knew there was a potential conflict when he drafted the Cornerstone Trust so that the trustee could make distributions to one or some but not all of the beneficiaries. One of Plaintiffs' main complaints is that Hartshorn used trust assets for the benefit of the Church of the Compassionate Service and its members. Therefore, at least some of Plaintiffs' claims concern actions that were permitted by the Cornerstone Trust declaration, and the Court cannot conclude that the settlement of such claims in exchange for a distribution of trust property is impermissible. *See Heiman v. Mayfield*, 300 Ga. App. 879, 882-83, 686 S.E.2d 284, 287-88 (2009) (finding that release of negligence claims against trustee in exchange for distribution of trust assets was not against public policy). Based on the foregoing, the Court approves the settlement between Plaintiffs and the Hartshorn Defendants.

**II. The Court Has Subject Matter Jurisdiction**

The Court previously concluded that federal question jurisdiction exists in this action based on Plaintiffs' claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964. Loren Gill and Elm Leasing ("Elm Defendants") contend that the Court cannot exercise subject matter jurisdiction in light of the settlement because (1)

9

Plaintiffs lost standing to pursue their federal RICO claims and (2) Plaintiffs failed to state a federal RICO claim against the Elm Defendants. The Court addresses each issue in turn.

### A. Plaintiffs Have Standing to Pursue RICO Claims

The Elm Defendants argue that in light of the settlement, Plaintiffs are no longer beneficiaries of the Cornerstone Trust, and they contend that under *Nalley v. Langdale*, 319 Ga. App. 354, 734 S.E.2d 908 (2012), Plaintiffs do not have standing to pursue their claims. In *Nalley*, the Georgia Court of Appeals concluded that a former trustee who had resigned from his position could no longer pursue claims on behalf of the trust's beneficiaries for return of funds to the trust. *Nalley*, 319 Ga. App. at 367, 734 S.E.2d at 918. The Court of Appeals noted that "the right to pursue an action concerning the wrongful distribution of trust funds belongs exclusively to the trust beneficiaries or to one with the authority to act on behalf of the trust beneficiaries." *Id.*

Though they settled their claims against the Hartshorn Defendants, Plaintiffs reserved their claims against Loren Gill and Elm Leasing. Those claims allege that Loren Gill fraudulently obtained assets from the Cornerstone Trust for the benefit of his company, Elm Leasing, and that he should be required to return those assets to the Cornerstone Trust. Plaintiffs maintain that they have a sufficient beneficial interest in the return of those

10

assets because under their settlement agreement, they are entitled to 40% of any recovered assets. Though Plaintiffs are seeking to separate themselves from the Cornerstone Trust, they will not waive their beneficiary status until all of the claims between the Elm Defendants and the Cornerstone Trust are resolved. And even if the Court agreed with the Elm Defendants' position that Plaintiffs have waived their right to continue as beneficiaries of the Cornerstone Trust, Plaintiffs have a contractual agreement that entitles them to 40% of the assets that are restored to the Cornerstone Trust. Plaintiffs thus have a keen interest in pursuing the recovery of these misappropriated trust assets. Their interest is not hypothetical or speculative. It is real. If they are successful, they are entitled to a significant benefit. They have every incentive to pursue the claims vigorously.

Moreover, Plaintiffs are the only parties with the incentive and motivation to seek recovery of those assets pursuant to RICO. Hartshorn and Van Gasken have not asserted a RICO claim against the Elm Defendants. Therefore, unlike the former trustee in *Nalley*, Plaintiffs are arguably the only ones with a sufficient interest to have standing to pursue the RICO claims against the Elm Defendants. The Court rejects Defendants' argument that the contingent nature of Plaintiffs' interest deprives them of standing to pursue their claims. For all of these reasons, the

Court concludes that Plaintiffs have standing to pursue their federal RICO claims against the Elm Defendants.

B.  Plaintiffs Stated a Claim Under RICO

The Elm Defendants argue that even if Plaintiffs have standing to pursue the federal RICO claims, they failed to state a claim upon which relief may be granted. Plaintiffs allege that Loren Gill conspired with John Gill to defraud Hartshorn and Van Gasken into diverting Cornerstone Trust assets and single asset property trust assets to Elm Leasing via the mail and wires. Plaintiffs contend that they, as beneficiaries of the Cornerstone Trust, were injured by this fraudulent diversion of trust assets.[3] The Court is satisfied that these contentions sufficiently allege conduct of an enterprise through a pattern of racketeering activity and injury to business or property by reason of the racketeering activity. *See, e.g., Corcel Corp. v. Ferguson Enters., Inc.*, No. 13-13284, 2014 WL 1230299, at *4 (11th Cir. Mar. 24, 2014) (per curiam) (setting forth requirements of federal civil RICO claim). Therefore, Plaintiffs did not fail to state a federal RICO claim against the Elm Defendants. Federal question jurisdiction exists, and the Court may exercise supplemental

---

[3] The Court is convinced that the present allegations sufficiently state a RICO claim against Elm Leasing and Loren Gill. There is apparently some confusion among the parties regarding the precise nature of Plaintiffs' RICO claims against the Elm Defendants, however, so to avoid any contention at trial that Defendants were not on notice of the claims against them, the Court requires Plaintiffs within 14 days of today's order to supplement their RICO interrogatory responses to explain the exact contentions supporting their RICO claims.

jurisdiction over the remaining state law claims, which arise out of the same common nucleus of operative fact. The Elm Defendants' motions to dismiss (ECF Nos. 180 & 209) are denied.

### III. Hartshorn Defendants' Motion to File Out-of-Time Answer

The Hartshorn Defendants seek leave to file an out-of-time answer to the Intervenor Complaint (ECF No. 176). In late 2012, Intervenors Wallace Whitten, Steve Thomas, and Michael Gill sought leave to intervene in this action. The Court granted Intervenors' motion to intervene on February 19, 2013. Intervenors filed their Complaint on February 22, 2013—in the middle of discovery and while two summary judgment motions were in the briefing stage. Counsel for the Hartshorn Defendants inadvertently failed to file an answer to the Intervenors' Complaint on behalf of the Hartshorn Defendants. The Hartshorn Defendants now seek to correct that mistake. Intervenors oppose the motion for leave to file answer and request entry of a default judgment against the Hartshorn Defendants. The Hartshorn Defendants' Motion for Leave to File Answer Out of Time (ECF No. 176) is granted.

The Intervenor Complaint asserts breach of trust claims against Defendants Kevin Hartshorn and Daniel Van Gasken. Intervenor Compl. ¶¶ 25-29, ECF No. 82. The Intervenor Complaint also seeks (1) a declaration that Wallace Whitten and Steve Thomas are trustees of the Cornerstone Trust, (2) an order requiring Hartshorn and Van Gasken to return funds they allegedly diverted

13

from the Cornerstone Trust and related trusts, and (3) removal of Hartshorn and Van Gasken from their trustee positions. *Id.* ¶¶ 15-24, 28. The relief sought in the Intervenor Complaint is nearly identical to the relief sought in the cross-claim of Defendant Loren Gill against the Hartshorn Defendants—which Wallace Whitten and Michael Gill attempted to join before they intervened in this action. *See generally* Answer & Cross-cl. of Loren Gill & Elm Leasing, LLC, ECF No. 31. Specifically, the cross-claim seeks (1) removal of Hartshorn and Van Gasken from their trustee positions, (2) damages caused by the alleged breaches of trust by Hartshorn and Van Gasken, and (3) appointment of additional trustees. Answer & Cross-cl. 23-27, ECF No. 31; 2d Am. Cross-cl. ¶ 1, ECF No. 48. The Hartshorn Defendants did answer the cross-claim of Loren Gill, which Whitten and Michael Gill attempted to join. Answer to Cross-cl., ECF No. 49. The Hartshorn Defendants also sought partial summary judgment on Whitten's claims against them, which was granted in part and denied in part.

Under Federal Rule of Civil Procedure 6(b), the Court may extend the time for filing an answer after the deadline has expired "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "The Supreme Court has identified four factors to guide courts in determining whether excusable neglect has occurred." *Staley v. Owens*, 367 F. App'x 102, 105 (11th Cir. 2010). Those factors are: (1) "the danger of prejudice

14

to the [other party]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant, and" (4) " whether the movant acted in good faith." *Id.* (internal quotation marks omitted). The most important factors are absence of prejudice and the interest of efficient judicial administration. *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-98 (1993)).

It has never been a secret that the Hartshorn Defendants oppose the relief sought in the Intervenor Complaint. The Intervenor Complaint seeks relief that is largely identical to relief sought by Loren Gill in his cross-claim against the Hartshorn Defendants, which Michael Gill and Whitten attempted to join. The Hartshorn Defendants did answer the cross-claim. They also sought partial summary judgment on Whitten's claims that are predicated on his status as a trustee of the Cornerstone Trust—a claim that was made in the Intervenor Complaint, not in the cross-claim. In sum, as Intervenors acknowledge, the parties have litigated this case as though the Hartshorn Defendants answered the Intervenor Complaint and denied its allegations. Resp. to Hartshorn Defs.' Mot. for Leave to File Answer 1, ECF No. 184 (agreeing that "the parties and the Court have treated some issues raised in the Intervenors' Complaint as contested").

For these reasons, the Court finds that there would be no danger of prejudice and no delay if the Hartshorn Defendants were permitted to file an out-of-time answer to Intervenors' Complaint. The Court also finds that the Hartshorn Defendants' failure to file a timely answer was an inadvertent mistake and that there is no indication of bad faith. The Court therefore grants the Hartshorn Defendants' Motion for Leave to File Answer Out of Time (ECF No. 176). The Hartshorn Defendants shall answer the Intervenor Complaint on or before April 25, 2014.

**IV. Remaining Motions**

The Court declines to rule on the pending motions in limine at this time and instructs the Clerk to terminate those motions (ECF Nos. 187, 189 & 195). The parties may refile those motions in limine if necessary prior to the trial of this action, which will take place in September 2014. Plaintiffs' motion to dismiss Counts 1-5, 7-8, and 13 against Loren Gill and Elm Leasing (ECF No. 199) is granted, and those claims are dismissed with prejudice.

CONCLUSION

As discussed above, the motion to void the settlement (ECF No. 179) is denied, and the motion to approve the settlement (ECF No. 201) is granted. The motions to dismiss (ECF Nos. 180 & 209) are denied. The Hartshorn Defendants' motion for leave to file out-of-time answer (ECF No. 176) is granted. Plaintiffs' motion

to dismiss Counts 1-5, 7-8, and 13 against Loren Gill and Elm Leasing is granted (ECF No. 199).  The Clerk is instructed to terminate the motions in limine (ECF Nos. 187, 189 & 195).

IT IS SO ORDERED, this 14th day of April, 2014.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
