IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| KAITLYN GILL, LAUREN GILL, and DANIEL VAN GASKEN, | * | |
| | * | |
| Plaintiffs, | * | |
| vs. | * | CASE NO. 4:12-CV-77 (CDL) |
| LOREN GILL and ELM LEASING, LLC, | * | |
| Defendants. | * | |

O R D E R

After four days of trial, a jury determined that Defendants Loren Gill and Elm Leasing, LLC unlawfully took money that belonged to Plaintiff Daniel Van Gasken in his capacity as the trustee for multiple trusts that benefitted a trust known as the Gill Family Cornerstone Trust. Specifically, the jury found that "Daniel Van Gasken, as trustee of the real estate holding trusts benefitting the Gill Family Cornerstone Trust, should recover damages for conversion against Loren Gill . . . [in the amount of] $240,146 . . . [and] against Elm Leasing, LLC [in the amount of] $2,846,594." Jury Verdict 3 (ECF No. 276). The jury also found that Van Gasken should recover his expenses of litigation, including attorney's fees, from Loren Gill and Elm Leasing, LLC. *Id.* The parties subsequently stipulated that $137,620.05 was a reasonable amount for Van Gasken's litigation

expenses. Mot. to Amend J., ECF No. 286. A final amended judgment was entered that awards Van Gasken $240,146 against Loren Gill, $2,846,594 against Elm Leasing, LLC, and $137,620.05 against Loren Gill and Elm Leasing, LLC, jointly. Am. J., ECF No. 288.

Dissatisfied with the jury verdict, both Defendants filed motions for judgment as a matter of law or, in the alternative, for new trial. For the reasons explained in the remainder of this Order, those motions (ECF Nos. 293 & 295) are denied.

BACKGROUND

John Gill was a pioneer in the pay day loan industry. Looking for a place to invest his profits and minimize his taxes, he set up an elaborate scheme in which he took a purported vow of poverty and became a minister of the Order of the International Academy of Lymphology. He set up the Gill Family Cornerstone Trust in 1999 with his daughters, Kaitlyn and Lauren Gill, included as beneficiaries. The Gill Family Cornerstone Trust was the beneficiary of approximately 250 real estate holding trusts that each owned one parcel of real estate, typically income-producing property. Van Gasken, a friend of John Gill's, was the trustee of the real estate holding trusts. Van Gasken authorized John Gill to manage the properties through a management company. The management company received all of the income generated by the properties owned by the real estate

holding trusts. The management company also received revenue generated by certain business holding trusts that are not parties to this litigation. That management company made payments indirectly to John Gill, which were structured as payment to him for his subsistence as a minister of the Order of the International Academy of Lymphology.

All went according to John Gill's plan until 2009, when he was convicted in Florida on criminal charges related to his pay day loan businesses. Rather than report for prison, John Gill fled and has been a fugitive ever since. His absence complicated the operation of his intricate "trust-based" real estate empire. Van Gasken and his business associate Kevin Hartshorn established new management companies to manage the rental properties. One of John Gill's brothers, Loren Gill, attempted to fill the void left by John Gill's absence. Acrimony developed between Loren Gill and Van Gasken, who controlled the trusts as trustee.

Litigation ensued, and John Gill's brothers, children, and former business associates fought for control of the trusts. The present action arose when John Gill's daughters, who were beneficiaries of the Cornerstone Trust, accused Loren Gill, Van Gasken, and others of depleting the Cornerstone Trust's assets. The daughters settled their claim against Van Gasken and others in exchange for 40% of the properties held in the real estate

holding trusts that benefitted the Cornerstone Trust. Under that settlement, the daughters are also entitled to 40% of any assets recovered from Loren Gill. *Gill v. Hartshorn*, No. 4:12-CV-77 (CDL), 2014 WL 1431196, at *4 (M.D. Ga. Apr. 14, 2014).

The claims that remained for resolution by the jury were RICO claims by Kaitlyn and Lauren Gill against Loren Gill and Elm Leasing, LLC and conversion claims by Van Gasken, in his capacity as trustee of the real estate holding trusts, against Loren Gill and Elm Leasing, LLC.[1] Elm Leasing asserted a counterclaim against Van Gasken and third-party claims against nine additional parties. All of these claims related to property titled to Elm Leasing, LLC that had been managed by John Gill's management company. Van Gasken asserted that he had been duped into believing that the property in question, which he claimed had been purchased with proceeds from the real estate holding trusts for which he was trustee, belonged to a trust benefitting the Cornerstone Trust. As it turned out, between 2005 and 2008, John and Loren Gill purchased eight parcels of property and titled them in the name of Elm Leasing, LLC, which was actually owned by Loren Gill. Van Gasken claimed that he later learned that (a) Loren Gill owned Elm Leasing and (b) much

[1] During trial, the Court granted judgment as a matter of law against Kaitlyn and Lauren Gill on their unjust enrichment claims and related claims for equitable relief against Loren Gill and Elm Leasing. Elm Leasing abandoned its trespass claim against Van Gasken and others, and Elm Leasing and Loren Gill abandoned their claim for indemnity against Van Gasken and others.

of the money used to purchase the Elm Leasing properties was stolen from the real estate holding trusts for which he was trustee and which had the Cornerstone Trust as their beneficiary. He sought to get that money back in this action.

At trial, Van Gasken's expert witness, accountant Robert Behar, analyzed the management company's bank records and determined that roughly $2,850,000 of the funds used to pay for the Elm Leasing properties were real estate holding trust proceeds that had been received by the management company on behalf of those trusts. *E.g.*, Trial Tr. vol. II, 155:18-22, 200:8-16, Sept. 9, 2014, ECF No. 301. Specifically, Behar testified that the money for the properties:

> originated from the management company that managed the rental property owned by the Gill Family Cornerstone Trust, and all of that was exclusively from that source. So roughly $850,000 on 6499 plus all of the remaining $2 million or whatever -- the numbers, without pulling the sheet out -- all originated from rental properties that were already owned by the Gill Family Cornerstone Trust or owned by trusts that had that as a beneficiary.

*Id.* at 200:9-16. Behar also testified that he was able to account for the funds the management company received on behalf of each property held by a real estate holding trust. *Id.* at 191:8-17. Defendants dispute Behar's conclusions, arguing that the money came from Loren Gill's personal business holdings. But, based on Behar's testimony, a reasonable juror could conclude that the funds originated from the real estate holding

trusts. A reasonable juror could also conclude that the management company held those funds for the benefit of the real estate holding trusts. *See* Trial Tr. vol. III, 225:24-226:15, Sept. 10, 2014, ECF No. 302 (Kevin Hartshorn testifying that the management company used the rental income to grow the corpus of the real estate holding trusts); *see also id.* at 239:9-20 (Hartshorn testifying that he, as trustee of the Cornerstone Trust, did not receive the rental proceeds).

It is undisputed that Van Gasken knew that at least some real estate holding trust proceeds were used to pay for the eight Elm Leasing parcels. But Van Gasken testified that John Gill led him to believe that Elm Leasing was owned by a trust that benefitted the Cornerstone Trust, not by Loren Gill. Trial Tr. vol. II at 97:7-18.

Van Gasken also introduced evidence that the office manager of the new management companies calculated that the companies held $234,684 that belonged to Elm Leasing, and she issued checks to Loren Gill totaling that amount. At the time, there had been no analysis of where the funds for the Elm Leasing properties originated, so the office manager mistakenly believed that Loren Gill was entitled to the funds. *See* Defs.' Trial Ex. 192, Email from R. Behar to R. Childs (May 2, 2013) Attach. 2 at 3, ECF No. 280-15 at 5 (noting that the forensic examination was not done until after the "cash that was not due to Loren Gill"

had been given to him). After Behar determined that the funds originated from the real estate holding trust properties, Van Gasken demanded return of the payment.

The jury found that Loren Gill and Elm Leasing participated in an enterprise that engaged in a pattern of racketeering activity, but that the activity did not cause Kaitlyn or Lauren Gill damages. Therefore, judgment was entered in favor of Defendants on Kaitlyn and Lauren Gill's RICO claims. The jury found, however, that Loren Gill and Elm Leasing converted property belonging to Van Gasken in his capacity as trustee of the real estate holding trusts and awarded damages. The jury also found against Elm Leasing on its counterclaims and third-party claims.

DISCUSSION

Defendants argue that Van Gasken's conversion claims fail as a matter of law. To prevail on their motions for judgment as a matter of law, Defendants must show that the jury had no "legally sufficient evidentiary basis to find for" Van Gasken. Fed. R. Civ. P. 50(a). In reviewing the evidence, "the [c]ourt must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 957 (11th Cir. 2014). "Where a legally sufficient basis exists for a reasonable jury to find for a particular party on an

issue, judgment as a matter of law is not proper." *Watkins v. City of Montgomery, Ala.*, No. 13-11718, 2014 WL 7331581, at *1 (11th Cir. Dec. 24, 2014).

"Conversion is an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to [his] rights." *Dierkes v. Crawford Orthodontic Care, P.C.*, 284 Ga. App. 96, 98, 643 S.E.2d 364, 367 (2007) (internal quotation marks omitted). To establish conversion, Van Gasken was required to show that he had title to the property or an immediate right of possession to the property, that Defendants wrongfully possessed it, and that he demanded possession but the Defendants refused to surrender it. *Id.* at 98-99, 643 S.E.2d at 368 (finding no conversion because defendants returned the property and plaintiffs could not prove diminution damages).

Here, Defendants argue that Van Gasken's conversion claims (and his derivative claim for attorney's fees) fail for three main reasons. First, Defendants contend that there was no evidence that the real estate holding trusts had title to the money or an immediate right to it. Second, Defendants claim that there was no evidence tying specific funds to specific real estate holding trusts. And third, Defendants assert that the transfers to Defendants were authorized. The Court addresses each argument in turn.

**I. Was There Evidence that the Real Estate Holding Trusts Had a Right to the Money?**

To recover damages for conversion, Van Gasken was required to prove that the real estate holding trusts had title to or a right to immediate possession of the money that was allegedly converted. *E.g.*, *Dierkes*, 284 Ga. App. at 98, 643 S.E.2d at 368. Defendants contend that the management companies, which were not owned by the real estate holding trusts, had title to the money. Van Gasken presented evidence from which a reasonable jury could conclude that the management companies held the rental proceeds on behalf of the real estate holding trusts, which thus had a right to possession of the money. Although Defendants disagreed vehemently with that evidence, enough evidence existed to create a jury question.

Defendants also assert that some of the money used to buy the properties for Elm Leasing came from business holding trusts, not the real estate holding trusts. Defendants made this same argument at trial, but the jury apparently rejected it and instead believed Behar, who testified that his forensic examination of the management companies' banking records revealed that $2,850,000 of the Elm Leasing property funds came from the real estate holding trusts, not the business holding trusts. Based on this evidence, a reasonable juror could

conclude that the funds used to buy the Elm Leasing properties came from the real estate holding trusts.

Defendants further argue that Van Gasken's claim fails because Behar testified that the money used to buy the Elm Leasing properties belonged to the Cornerstone Trust (which is not a plaintiff here), not the real estate holding trusts. But Behar testified that the funds "originated from rental properties that were already owned by the Gill Family Cornerstone Trust *or owned by trusts that had that as a beneficiary*." Trial Tr. vol. II at 200:9-16 (emphasis added). And Hartshorn testified that the rental proceeds did *not* go to the Cornerstone Trust but were held by the management companies for the benefit of the real estate holding trusts. Trial Tr. vol. III, 225:24-226:15. From this, a reasonable juror could conclude that the funds held by the management companies did not belong to the Cornerstone Trust.

Finally, Defendants contend that Van Gasken does not have standing to pursue a conversion claim as to all the funds allegedly converted by Defendants because 40% of the properties previously held by the real estate holding trusts have been transferred to trusts that benefit John Gill's daughters. The claims against Defendants on behalf of the real estate holding trusts that held those properties were not released, and the daughters are entitled to 40% of any assets recovered from Loren

Gill. For these reasons, the Court concludes that there is enough evidence to establish that Van Gasken had standing to pursue the claims as to all funds allegedly converted from the real estate holding trusts.

**II. Was There Evidence of Where the Funds Originated?**

Defendants argue that even if the real estate holding trusts had a right to possession of the allegedly converted funds, Van Gasken's conversion claim against Elm Leasing fails because there was no evidence tying specific funds to specific real estate holding trusts. Conversion damages are available in "a civil action for trover." *Trey Inman & Assocs., P.C. v. Bank of Am., N.A.*, 306 Ga. App. 451, 458, 702 S.E.2d 711, 717 (2010). In general, money "is not subject to a civil action for trover with an election for damages for its conversion" because it is fungible intangible personal property. *Id.* But there are exceptions to this common law rule, including "where the money is a specific, separate, identifiable fund." *Maree v. ROMAR Joint Venture*, 329 Ga. App. 282, 290, 763 S.E.2d 899, 907 (2014) (internal quotation marks omitted). That said, a plaintiff in a conversion action does not have to identify "the number of each particular bill or note." *Farmers' Alliance Warehouse & Comm'n Co. v. McElhannon*, 98 Ga. 394, 394, 25 S.E. 558, 558 (1896). "[C]hecks and other negotiable instruments can be the subject of a conversion claim." *Trey Inman & Assocs.*, 306 Ga. App. at 458,

702 S.E.2d at 717. And "[i]n this day and age when funds are commonly transferred via wire and other electronic means, [there is] no logical reason for treating specific and identifiable funds that are transferred electronically . . . differently from checks." *Id.* at 458-59, 702 S.E.2d at 717. Thus, a conversion action is available to recover specific amounts of money paid for a specific purpose. *Id.* For example, in *Trey Inman & Associates*, the Georgia Court of Appeals found a conversion claim where a closing attorney wrongfully disbursed a portion of real estate sale proceeds to the seller instead of the bank that was entitled to all of the proceeds.

In arguing that Van Gasken did not plead for the recovery of a specific fund of money, Defendants rely chiefly on *Maree v. ROMAR Joint Venture*. In that case, the court concluded that a joint venture had no conversion claim when the joint venture's manager withdrew money from the joint venture's cash reserves to pay litigation costs. *Maree*, 329 Ga. App. at 290-91, 763 S.E.2d at 906-07. But there, "[t]he money was withdrawn from a joint fund that belonged to all joint venturers according to their respective ownership percentages." *Id.* at 291, 763 S.E.2d at 907. In other words, there was no evidence of where the funds originated. Here, Behar traced the funds from origination to their ultimate destination. He testified that roughly $2,850,000 of the funds that were used to pay for the Elm

Leasing properties originated from the rental properties held by the real estate holding trusts. Trial Tr. vol. II, 200:9-16. Behar also testified that he was able to account for the funds the management company received on behalf of each property held by a real estate holding trust. Trial Tr. vol. II, 191:8-17. Therefore, there was sufficient evidence for a reasonable juror to conclude that Van Gasken sought to recover a specific fund of money from Elm Leasing. The fact that the alleged converters later mingled the funds with other funds does not change this conclusion. *See Adler v. Hertling*, 215 Ga. App. 769, 774, 451 S.E.2d 91, 97 (1994) ("Mingling of the funds in a mixed bank account does not destroy their identity so as to prevent their recovery in an action for conversion as long as the funds or a portion thereof can be traced.").

**III. Was There Evidence that the Transfers Were Not Authorized?**

Defendants' last argument is that Van Gasken's conversion claims fail because Van Gasken authorized the transactions. One cannot recover for conversion if he authorized the transaction. *Dierkes*, 284 Ga. App. at 98, 643 S.E.2d at 367. Defendants argue that Van Gasken knew that John Gill transferred real estate holding money to Elm Leasing and did not object. Defendants also assert that Van Gasken authorized the 2012 payment to Loren Gill.

Van Gasken testified that John Gill led him to believe that Elm Leasing was owned by a trust that benefitted the Cornerstone Trust, the same trust that the real estate holding trusts benefitted. He did not believe Elm Leasing was owned personally by Loren Gill. Trial Tr. vol. II at 97:7-18. As to the 2012 payment to Loren Gill, there had been no analysis of where the funds for the Elm Leasing properties originated, so the office manager mistakenly believed that Loren Gill was entitled to the funds after this Court determined that Loren Gill did in fact own Elm Leasing. *See* Defs.' Trial Ex. 192, Email from R. Behar to R. Childs (May 2, 2013) Attach. 2 at 3, ECF No. 280-15 at 5 (noting that the forensic examination was not done until after the "cash that was not due to Loren Gill" had been given to him). After Behar determined that the funds originated from the real estate holding trust properties, Van Gasken demanded return of the payment. Based on this evidence, the Court finds that there was sufficient evidence for a reasonable juror to conclude that Van Gasken did not authorize the transactions.

**IV. Defendants' Motion for a New Trial**

Defendants also move in the alternative for a new trial. Those motions are based on the same arguments Defendants relied on in support of their motions for judgment as a matter of law. As discussed above, the evidence viewed in the light most favorable to Van Gasken supports the jury's verdict, and the

Court may not substitute its judgment for that of the jury unless the "verdict is against the great, not merely the greater weight of the evidence." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145, 1155 (11th Cir. 2009) (per curiam) (internal quotation marks omitted) (reversing district court's grant of new trial because jury's verdict was not against the great weight of the evidence).

CONCLUSION

In sum, there was sufficient evidence for a reasonable jury to find in favor of Van Gasken on his conversion claims and his derivative claim for attorney's fees. Defendants' motions for judgment as a matter of law (ECF Nos. 293 & 295) are therefore denied. The Court also denies Defendants' alternative motions for a new trial under Federal Rule of Civil Procedure 59.

IT IS SO ORDERED, this 13th day of February, 2015.

S/Clay D. Land

CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA